IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

TERRI FIELD,                          )
                                      )
                  Plaintiff,          )
                                      )   CIVIL ACTION
v.                                    )
                                      )   No. 08-4079-JAR-DWB
                                      )
MICHAEL J. ASTRUE,                    )
Commissioner of Social Security,      )
                                      )
                  Defendant.          )
_____)

REPORT AND RECOMMENDATION

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying disability insurance benefits (DIB) and supplemental security income (SSI) under sections 216(i), 223, 1602 and 1614(a)(3)(A) of the Social Security Act.  42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A)(hereinafter the Act).  The matter was referred for a Report and Recommendation, and the court recommends the Commissioner's decision be REVERSED and the case be REMANDED for further proceedings consistent with this opinion.

I.   Background

This is the second case in which plaintiff has sought judicial review of a decision by the Commissioner denying her applications for benefits filed on Jun. 13, 2003.  (R. 45-47,

412-36); see also, Field v. Astrue, No. 06-4126-SAC, 2007 WL
2176031 (D. Kan. Jun. 19, 2007).[1]  The court found error in the
Commissioner's first decision (R. 13-24), and remanded for
further proceedings, including a new determination whether
plaintiff's mental impairments are severe and for a proper
evaluation of the treating source opinion of plaintiff's primary
care physician, Dr. Spangler.  (R. 425-32).  The court noted that
the Commissioner must also make a new credibility determination
on remand.  (R. 434-36).

On remand, additional proceedings were conducted, additional
evidence was received, and another hearing was held before
Administrative Law Judge (ALJ) George M. Bock, the same ALJ who
had conducted the earlier proceedings.  (R. 397-1117).  At the
hearing on remand, plaintiff was represented by an attorney and
testimony was taken from plaintiff, a medical expert (ME), and a
vocational expert (VE).  (R. 400, 1092-93).

After the hearing, plaintiff submitted a letter from Dr.
Spangler clarifying the doctor's opinion that plaintiff can sit,
stand, and walk for a total of four to six hours in a workday and

---

[1]As cited, the court's earlier decision is available
electronically.  A copy is also included in the administrative
record.  (R. 412-36).  Further citation will be to the decision
included in the administrative record.  Because page 24 of the
earlier decision (R. 435) is not included in the administrative
record filed with the court, the court has secured a copy of that
page from the court's CM/ECF (Case Management/Electronic Case
Filing) system, in Case No. 06-4126-SAC.

must lie down at unpredictable times for a total of two to four hours in a workday.  (R. 1049).  On Apr. 23, 2008, the ALJ issued a decision on remand, finding that plaintiff is not disabled within the meaning of the Act, and denying plaintiff's applications.  (R. 400-07).

Specifically, the ALJ found that plaintiff has not engaged in substantial gainful activity since her alleged onset date of Oct. 5, 2001,[2] and that she has degenerative disc disease, asthma, weight disproportionate to height, and depression, a combination of "severe" impairments, but which does not meet or medically equal the severity of a Listing.  (R. 402-02A).

The ALJ considered the testimony, the record evidence, and the medical opinions and found that plaintiff's statements regarding her symptoms "are not credible to the extent they are inconsistent with the residual functional capacity assessment." (R. 403).  He gave "little weight" to Dr. Spangler's treating source opinion, id., but "significant weight" to the nonexamining source opinion of the testifying medical expert, Dr. Axline.  (R.

---

[2]As plaintiff notes, she amended her onset date to May 11, 2003 at the first ALJ hearing, and the ALJ acknowledged that fact in the first decision.  (Pl. Br. 1, n.1)(citing R. 13, 369).  It was error for the ALJ to find an alleged onset date of Oct. 5, 2001.  The ALJ relied on this erroneous onset date in finding that plaintiff's earnings in 2002 and 2003 demonstrate an ability to perform work after her onset date.  (R. 402, 405).  On remand, the Commissioner must correct this factual error and include the correct alleged onset date in his consideration of the credibility of plaintiff's allegation of symptoms.

405).  He found that plaintiff "is limited mentally to unskilled work," and that she has the residual functional capacity (RFC) to perform a range of light work limited to standing or walking three to four hours in an eight-hour workday, and occasionally performing all postural maneuvers.  (R. 402A).  But, she may not drive, work around dangerous machinery, work at unprotected heights, or be exposed to extreme heat or cold, or concentrated airborne irritants.  (R. 402A).

The ALJ found plaintiff is unable to perform past relevant work, but that there are a significant number of jobs in the national economy of which plaintiff is capable such as work as an office helper, insert machine operator, order clerk, document preparation, and subassembly.  (R. 406-07).  Therefore, he found that plaintiff was not disabled from Oct. 5, 2001 through the date of the decision, and denied her applications.  (R. 407).

When the Appeals Council did not assume jurisdiction after the decision was filed, the ALJ's decision became the final decision of the Commissioner on remand, 20 C.F.R. §§ 404.985, 416.1484, and on June 30, 2008 plaintiff filed a timely complaint seeking judicial review of the decision.  (Doc. 1).

## II.  Legal Standard

The court's review is guided by the Act.  42 U.S.C. §§ 405(g), 1383(c)(3).  Section 405(g) provides, "The findings of the Commissioner as to any fact, if supported by substantial

evidence, shall be conclusive."  The court must determine whether
the factual findings are supported by substantial evidence in the
record and whether the ALJ applied the correct legal standard.
Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); White v.
Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial
evidence is more than a scintilla, but less than a preponderance,
and it is such evidence as a reasonable mind might accept to
support a conclusion.  Zoltanski v. F.A.A., 372 F.3d 1195, 1200
(10th Cir. 2004); Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir.
1988).  The court may "neither reweigh the evidence nor
substitute [it's] judgment for that of the agency."  White, 287
F.3d at 905 (quoting Casias v. Sec'y of Health & Human Servs.,
933 F.2d 799, 800 (10th Cir. 1991)); Frantz v. Astrue, 509 F.3d
1299, 1300 (10th Cir. 2007); Hackett v. Barnhart, 395 F.3d 1168,
1172 (10th Cir. 2005).  The determination of whether substantial
evidence supports the Commissioner's decision, however, is not
simply a quantitative exercise, for evidence is not substantial
if it is overwhelmed by other evidence or if it constitutes mere
conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d
222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual
can establish that she has a physical or mental impairment which
prevents her from engaging in substantial gainful activity and is
expected to result in death or to last for a continuous period of

at least twelve months.  42 U.S.C. § 423(d).  The claimant's impairments must be of such severity that she is not only unable to perform her past relevant work, but cannot, considering her age, education, and work experience, engage in any other substantial gainful work existing in the national economy.  Id.

The Commissioner uses a five-step sequential process to evaluate whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920 (2008); Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir. 2004); Ray, 865 F.2d at 224.  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has severe impairments, and whether the severity of her impairments meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Id. at 750-51.  If plaintiff's impairments do not meet or equal the severity of a listing, the Commissioner assesses claimant's RFC.  20 C.F.R. §§ 404.1520, 416.920.  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

After assessing claimant's RFC, the Commissioner evaluates steps four and five--whether the claimant can perform her past

-6-

relevant work, and whether she is able to perform other work in the economy.  Williams, 844 F.2d at 751.  In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work.  Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show other jobs in the national economy within plaintiff's capacity. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff claims the ALJ erred in weighing the medical opinions of her treating physician, Dr. Spangler; of a nontreating physician, Dr. Curtis; and of two nonexamining sources:  1) the agency consultant who prepared a physical RFC assessment, and 2) the medical expert who testified at the ALJ hearing, Dr. Axline.  She also claims the ALJ erred in evaluating the credibility of her allegations of disabling symptoms, and in evaluating her depression.  The Commissioner argues that the ALJ properly evaluated plaintiff's depression, properly weighed the medical opinions and discounted Dr. Spangler's opinion, and properly evaluated the credibility of plaintiff's allegations of symptoms.  The court will address plaintiff's claims in the order of the sequential evaluation process, beginning with consideration of the ALJ's evaluation of plaintiff's depression.

**III. Evaluation of Depression**

Plaintiff claims remand is necessary for the Commissioner to properly assess plaintiff's mental impairments because the ALJ failed to follow the court's remand order and never discussed "one progress note from Valeo or from Dr. Shapiro in [the ALJ's] decision" (Pl. Br. 37), because the ALJ did not perform a function-by-function assessment of plaintiff's mental abilities, and because a restriction to only unskilled work is inconsistent with the ALJ's determination that plaintiff has moderate deficiencies in concentration, persistence, or pace.  (Pl. Br. 38-39)(citing Weiderholt v. Barnhart, No. 03-3251, 121 Fed. Appx. 833, 839, 2005 WL 290082 *5 (10th Cir. Feb. 8, 2005)).  The Commissioner argues that the ALJ properly evaluated the severity of plaintiff's depression; that the progress notes from Valeo and from Dr. Shapiro are consistent with the ALJ's evaluation, and plaintiff does not show how the failure to discuss them produced an erroneous decision; that the Weiderholt case is distinguishable from this case; and that plaintiff does not point to evidence that she cannot perform unskilled work despite that the burden of proof is hers.  (Comm'r Br. 5-7).

## A.   Standard for Evaluating Mental Impairments

The Commissioner has promulgated a Psychiatric Review Technique for evaluating mental impairments.  20 C.F.R. §§ 404.1520a, 416.920a.  In evaluating the severity of mental impairments at steps two and three, the technique provides for

-8-

rating the degree of functional limitation in each of four broad mental functional areas:  activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.  Id. §§ 404.1520a(c) 416.920a(c).  After rating the degree of limitation in each functional area, the Commissioner determines the severity of plaintiff's mental impairments.  Id. §§ 404.1520a(d), 416.920a(d).

When the first three functional areas are rated as "none" or "mild," and the fourth area is rated as "none," the agency will conclude at step two of the sequential evaluation process that plaintiff's mental impairments are not severe "unless the evidence otherwise indicates that there is more than a minimal limitation in [plaintiff's] ability to do basic work activities." Id. §§ 404.1520a(d)(1), 416.920a(d)(1).  If the mental impairments are severe, the technique requires an evaluation of whether the impairment(s) meets or equals a listed impairment by comparing the step two findings and the medical evidence with the criteria of the listings.  Id. §§ 404.1520a(d)(2), 416.920a(d)(2).  If the Commissioner determines that plaintiff's mental impairments do not meet or equal a listing, he will then assess plaintiff's RFC.  Id. §§ 404.1520a(d)(3), 416.920a(d)(3).

In determining RFC, the regulations provide that the Commissioner will consider plaintiff's "ability to meet the physical, mental, sensory, and other requirements of work."  Id.

-9-

§§ 404.1545(a)(4), 416.945(a)(4).  The regulations provide that "[a] limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce [plaintiff's] ability to do [work.]"  Id. §§ 404.1545(c), 416.945(c).

The Commissioner has clarified the difference between evaluating the severity of mental impairments at steps two and three based upon the broad mental functional areas identified in the psychiatric review technique and assessing mental RFC.  SSR 96-8p, West's Soc. Sec. Reporting Serv., Rulings 147 (Supp. 2008).  "The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in" the four functional areas.  Id.  RFC must be expressed in terms of specific work-related functions.  Id. at 148.  "Work-related mental activities generally required by competitive, remunerative work include the abilities to:  understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting."  Id. at 149.  Therefore, an ALJ should not state a mental RFC in terms of the four mental functional areas, but

should make a function-by-function assessment of each of the work-related mental activities relevant to the case at hand.

### B.    The ALJ's Determination

Here, the ALJ found that plaintiff's "severe" combination of impairments includes depression.  (R. 402).  He summarized the psychiatric review technique, and applied it in determining the severity of plaintiff's depression.  (R. 402A).  The court quotes the ALJ's discussion regarding the limitations resulting from, and the severity of, plaintiff's depression:

> With regard to the claimant's depression, the Administrative Law Judge has carefully considered the entire record and notes that the claimant has admitted that her medications relieve her symptoms.  Further, she stopped treatment at Valeo in 2004 and relies solely on her family practitioner, Dr. Spangler, who has her on a mild dose of amitriptyline only.  Based on the overall record the Administrative Law Judge concludes that the evidence is consistent with no more than mild restrictions in activities of daily living, mild social dysfunction and moderate deficiencies of concentration, persistence or pace with no evidence of any extended decompensation or any "C" criteria. Functionally the claimant is limited mentally to unskilled work only.

Id.

### C.    Analysis

Plaintiff's argument that remand is necessary because the ALJ failed to follow the court's instructions in its remand order is without merit.  As plaintiff's argument implies, the remand order directed the Commissioner to "review all the evidence and make a new determination of whether plaintiff's mental

-11-

impairments are severe." (R. 425). That is what happened here, and the court finds no error in the ALJ's compliance. The ALJ stated he had "carefully considered the entire record," and made his determination regarding depression "[b]ased on the overall record." (R. 402A). Accordingly, he determined plaintiff's mental impairments are severe. Nothing more was required by the court's remand order.

Plaintiff argues that because the ALJ did not specifically mention progress notes from Valeo and Dr. Shapiro, he failed to follow the court's order. However, as the Commissioner argues, plaintiff does not point to evidence which was not discussed and which would change the ALJ's analysis. (Comm'r Br. 6). The Commissioner explains how, in his opinion, the evidence which was not discussed is consistent with the ALJ's evaluation. Id. Plaintiff contends that the Commissioner's argument is "nothing more than post-hoc rationalization" which is not permitted. (Reply 15)(citing Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168-69 (1962)).

As plaintiff argues, a decision cannot be affirmed on the basis of appellate counsel's post hoc rationalizations for agency action. Knipe v. Heckler, 755 F.2d 141, 149 n.16 (10th Cir. 1985). A reviewing court may not create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the

-12-

Commissioner's decision.  Grogan v. Barnhart, 399 F.3d 1257, 1263
(10th Cir. 2005)(citing SEC v. Chenery Corp., 318 U.S. 80, 87
(1943)).  However, the Commissioner's arguments here are not
post-hoc rationalizations.  The Commissioner does not attempt to
provide a rationale or a discussion which is missing from the
decision.  He demonstrates only that it was unnecessary for the
ALJ to discuss the progress notes at issue.  Plaintiff has not
shown that a discussion of the progress notes from Valeo or from
Dr. Shapiro was necessary in this case.

An ALJ need not discuss every piece of evidence.  Clifton v.
Chater, 79 F.3d 1009-10 (10th Cir. 1996).  He must discuss the
evidence supporting his decision, uncontroverted evidence he
chooses not to rely upon, and significantly probative evidence he
rejects.  Id. at 1010.  Plaintiff points to nothing within the
progress notes at issue which constitutes specific evidence
necessary to the ALJ's decision, uncontroverted evidence the ALJ
chose not to rely upon, or significantly probative evidence the
ALJ rejected.  Therefore, as the Commissioner argues, plaintiff
has failed to show how the progress notes at issue demonstrate
error in the ALJ's decision.  The Commissioner's summary of the
progress notes at issue demonstrates merely that it was not error
for the ALJ to refrain from discussing them.

Plaintiff's claims regarding the ALJ's mental RFC assessment
require a different result.  As plaintiff argues, the ALJ's

-13-

finding that plaintiff "is limited mentally to unskilled work only" (R. 402A), "is not function-by-function in any sense of the term." (Pl. Br. 38).  The ALJ applied the psychiatric review technique and analyzed plaintiff's mental impairment based upon the four broad mental functional areas at step two and step three of the sequential evaluation process. (R. 402A).  Thereafter, however, he summarily concluded that plaintiff is limited mentally to unskilled work only, without considering any specific work-related mental activities.

As discussed above, the Commissioner has explained that a mental RFC assessment requires itemizing specific work-related mental activities.  SSR 96-8p, West's Soc. Sec. Reporting Serv., Rulings 147 (Supp. 2008).  The regulations provide that "[a] limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce [plaintiff's] ability to do [work.]"  Id. §§ 404.1545(c), 416.945(c).

The Social Security Administration has promulgated a special form to document a mental residual functional capacity decision--Form SSA-4734-F4-SUP.  Program Operations Manual System (POMS) DI 24510.060, Mental Residual Functional Capacity Assessment.  Section I of that form consists of a worksheet "to aid in

deciding the presence and degree of functional limitations and the adequacy of documentation" regarding twenty mental functions grouped under four main categories.  Id.  After completing the worksheet in Section I, the medical consultant is to provide his mental RFC assessment in narrative format in Section III of the form.  Id.

Although there is no requirement that an ALJ complete a Mental RFC Assessment form, he is required to document application of the psychiatric review technique in his decision. 20 C.F.R. §§ 404.1520a(e), 416.920a(e).  Moreover, SSR 96-8p includes specific narrative discussion requirements for an RFC assessment.  West's Soc. Sec. Reporting Serv., Rulings 149.  That discussion is to cite specific medical facts to describe how the evidence supports each conclusion.  Id.  It must include an explanation how any ambiguities and material inconsistencies in the evidence were considered and resolved.  Id.  The ALJ is required to make an RFC assessment only after itemizing plaintiff's abilities in the work-related mental functions, and is not to base his mental RFC assessment only upon his findings regarding the four broad mental functional areas expressed in the psychiatric review technique.  Id. at 146-47.  Therefore, the court finds that the ALJ erred in failing to express or explain a narrative function-by-function assessment of plaintiff's capabilities for work-related mental activities--such as the

-15-

twenty work-related mental functions expressed in the Social
Security Administration's form SSA-4734-F4-SUP.

In her final argument regarding depression, plaintiff claims
the restriction to "unskilled work only" is internally
inconsistent with the ALJ's finding of moderate deficiencies of
concentration, persistence, or pace.  (Pl. Br. 38)(citing
Weiderholt, 121 Fed. Appx., at 839).  The Commissioner argues
that plaintiff does not point to evidence showing she cannot
perform unskilled work, and argues that Weiderholt can be
distinguished because in Weiderholt the ALJ made "additional more
specific findings" regarding plaintiff's mental impairments
whereas the ALJ here did not make such findings.  (Comm'r Br. 7).
The Commissioner is wrong on both counts.

Much of the 1117-page administrative record in this case may
properly be viewed as plaintiff's submission of evidence in
support of her burden of proof that she cannot perform even
unskilled work.  With regard to the particular issue here
(whether a limitation to "unskilled work only" adequately
explains plaintiff's limitations in mental functioning),
plaintiff is not making an evidentiary argument.  Rather, she is
arguing that the ALJ did not apply the correct legal standard in
evaluating her mental impairment, and erroneously equated
"unskilled work only" with a mental RFC limitation sufficient to

account for any deficiencies caused by her depression.  The court agrees with plaintiff's argument.

In Weiderholt, the court noted, "the ALJ found that, mentally, claimant was 'limited to simple, unskilled job tasks.'" 121 Fed. Appx., at 839(quoting the ALJ decision).  The court also stated, "the ALJ further found that claimant had 'mild restrictions in activities of daily living, mild difficulties in maintaining social functioning, [and] moderate difficulties in maintaining concentration, persistence, or pace,'" id.(quoting the ALJ decision), but that, "When describing Mrs. Wiederholt's capabilities to the VE, however, [the ALJ] included only the limitation of 'simple, unskilled' tasks mentally." Id.(quoting the administrative record).  The Weiderholt court found error:

> The relatively broad, unspecified nature of the description 'simple' and 'unskilled' does not adequately incorporate the ALJ's additional, more specific findings regarding Mrs. Wiederholt's mental impairments.  Because the ALJ omitted, without explanation, impairments that he found to exist, such as moderate difficulties maintaining concentration, persistence, or pace, the resulting hypothetical question was flawed.  Moreover, there is no evidence to suggest that the VE heard testimony or other evidence allowing her to make an individualized assessment that incorporated the ALJ's specific additional findings about Mrs. Wiederholt's mental impairments.

Id., 121 Fed. Appx. at 839.

This case is on all fours with the Weiderholt decision. Here, the ALJ found plaintiff is "limited mentally to unskilled work only."  (R. 402A).  Contrary to the Commissioner's argument,

the ALJ here also made "additional more specific findings"--that plaintiff has "mild restrictions in activities of daily living, mild social dysfunction and moderate deficiencies of concentration, persistence or pace." Id.  In describing his hypothetical individual to the VE, the ALJ stated that she was "limited to unskilled work."  (R. 1113).  If anything, the ALJ's use of the term "unskilled work" here is even more broad and unspecified than the term "simple, unskilled job tasks" used by the ALJ in Weiderholt.  A restriction to "unskilled work" without additional explanation regarding specific work-related mental activities (such as those suggested in the Commissioner's form SSA-4734-F4-SUP) is too broad and unspecified a term to convey meaning with regard to mental limitations in plaintiff's RFC.  As in Weiderholt, the court finds that the VE's testimony that plaintiff can perform "unskilled work" is not substantial evidence to support the ALJ's decision.

**IV.  Medical Opinions**

Plaintiff claims the ALJ erred in weighing the medical opinions of her treating physician, Dr. Spangler; a nontreating physician, Dr. Curtis; and two nonexamining physicians:  the state agency physician who completed a physical RFC assessment in Aug. 2003, and the medical expert who testified at the ALJ hearing, Dr. Axline.  (Pl. Br. 20-29).  Plaintiff concedes that Dr. Spangler's opinion is not worthy of controlling weight

because there is other evidence of record which is inconsistent with Dr. Spangler's opinion. Id. at 23. She argues that if the opinion had been properly evaluated in accordance with the appropriate factors it would have been accorded significant weight, and explains how, in her view, the regulatory factors should be weighed in evaluating Dr. Spangler's opinion. Id. at 24-27. She argues that the ALJ erred in failing to explain the specific weight given to the opinions of the nonexamining state agency physician and of the nontreating physician, Dr. Curtis. (Pl. Br. 27-28). Finally, plaintiff claims Dr. Axline's opinion should have been given little weight because his testimony was tainted by his unsubstantiated belief the plaintiff was a drug-seeker, and because Dr. Axline did not appear to have a full understanding of the record. Id. at 28-29. The Commissioner argues that the ALJ properly discounted Dr. Spangler's opinion, and explains how in his view the record (including the opinions of Dr. Curtis and Dr. Axline) supports that determination. (Comm'r Br. 7-12).

### A.    Standard for Weighing Medical Opinions

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s) including [claimant's] symptoms, diagnosis and prognosis." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). Such

opinions may not be ignored and, unless a treating source opinion is given controlling weight, <u>all</u> medical opinions will be evaluated by the Commissioner in accordance with factors contained in the regulations.  <u>Id.</u> §§ 404.1527(d), 416.927(d); SSR 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2008).  Those factors are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.  <u>Id.</u> §§ 404.1527(d)(2-6), 416.927(d)(2-6); <u>see</u> <u>also</u> <u>Drapeau v. Massanari</u>, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing <u>Goatcher v. Dep't of Health & Human Servs.</u>, 52 F.3d 288, 290 (10th Cir. 1995)).

A physician who has treated a patient frequently over an extended period of time (a treating source) is expected to have greater insight into the patient's medical condition.  <u>Doyal v. Barnhart</u>, 331 F.3d 758, 762 (10th Cir. 2003).  But, "the opinion of an examining physician [(a nontreating source)] who only saw the claimant once is not entitled to the sort of deferential

treatment accorded to a treating physician's opinion." Id. at 763 (citing Reid v. Chater, 71 F.3d 372, 374 (10th Cir. 1995)). However, opinions of nontreating sources are generally given more weight than the opinions of nonexamining sources who have merely reviewed the medical record. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004); Talbot v. Heckler, 814 F.2d 1456, 1463 (10th Cir. 1987) (citing Broadbent v. Harris, 698 F.2d 407, 412 (10th Cir. 1983), Whitney v. Schweiker, 695 F.2d 784, 789 (7th Cir. 1982), and Wier ex rel. Wier v. Heckler, 734 F.2d 955, 963 (3d Cir. 1984)).

If the treating source opinion is not given controlling weight, the inquiry does not end. Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). A treating source opinion is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." Id.

After considering the regulatory factors, the ALJ must give reasons in the decision for the weight he gives the treating source opinion. Id. 350 F.3d at 1301. When a treating physician's opinion is inconsistent with other medical evidence, the ALJ's task is to examine the other physicians' reports "to see if [they] 'outweigh[]' the treating physician's report, not the other way around." Reyes v. Bowen, 845 F.2d 242, 245 (10th Cir. 1988). "Finally, if the ALJ rejects the [treating source] opinion completely, he must then give 'specific, legitimate

-21-

reasons' for doing so." <u>Watkins</u>, 350 F.3d at 1301(citing <u>Miller v. Chater</u>, 99 F.3d 972, 976 (10th Cir. 1996) (quoting <u>Frey v. Bowen</u>, 816 F.2d 508, 513 (10th Cir. 1987)).

### B.    The ALJ's Determination

The ALJ discussed Dr. Spangler's opinion that plaintiff can sit for two hours, and stand for two to four hours in a workday; must lie down at unpredictable times for two to four hours in a workday; and must miss work due to her impairments three or more times a month; and gave four reasons for according Dr. Spangler's opinion "little weight."  (R. 403-04).  Those reasons are: (1) Opinions from specialists, (2) multiple clinical findings, (3) contemporaneous treatment records, and (4) other indications from treating sources.  (R. 403).

Although the decision is not completely clear, the ALJ's next discussion of the medical evidence and medical opinions is (in a very broad sense) organized in accordance with the reasons given for discounting Dr. Spangler's opinion.  (R. 404-06).  With regard to reason (1), opinions by orthopedic specialists, the ALJ specifically referred to reports by Drs. Trease, Krepps, and Burton.  (R. 404)(citing pages 236, 237, 238 (R. 354-56)).[3]

_____

[3]In the decision, the ALJ cites to the page numbers within the Medical Records--Part F of the administrative record--and written by hand in the lower right corner of each page of the record.  (R. 404).  But the court has located each page and cites to the page number assigned within the administrative record and stamped in the upper right corner of each page.

Related to reason (2), the ALJ noted "multiple clinical findings inconsistent with disability," and cited cardiovascular testing, a stress test, x-rays, cardiac cathertization, CT scans, a pulmonary angiogram, and Dr. Curtis's evaluation.  (R. 405) (citing pages 293, 328, 359, 444, 482, 483, 502, and Ex. 20F (R. 498-99, 548, 580, 620, 639, 640, 678)).[4]  Finally, the ALJ cited to a "pain management evaluation" by Dr. Geis who treated plaintiff at the Kansas Rehabilitation Hospital.  (R. 404)(citing page 209 (R. 295-96)).  It is not clear whether the ALJ considered this evaluation to be (3) a contemporaneous treatment record or (4) an other indication from a treating source.  Moreover, there is no other specific reference to treatment notes other than the notes of the orthopedic specialists.

The court notes that the ALJ acknowledged the physical RFC assessment form completed by a state agency physician at the initial determination:  "A reviewing physician found that the claimant was capable of a range of medium work in August 2003." (R. 404)(citing Ex. 3F, pages 61-68 (R. 183-90)).  The ALJ noted that the orthopedic specialist's recommendation of a regular exercise program is "absolutely inconsistent with any medical need to lie down" (R. 404), and that plaintiff's ability to perform at 10.20 METS on a stress test "is absolutely

---

[4]The left hip x-rays cited were not found at page 328 of the Medical Records (R. 580), or at page 328 of the administrative record.  (R. 328).

inconsistent with the level of functional disability alleged by the claimant and opined by Dr. Spangler." (R. 405).[5]

Finally, the ALJ summarized the opinion of the medical expert, Dr. Axline, that plaintiff had no limitations on her ability to sit, walk, or bend, that she could not stand in one spot, and that plaintiff engaged in drug-seeking behavior. Id. He accorded "significant weight" to Dr. Axline's opinion.

### C.   **Analysis**

The court agrees with plaintiff that the ALJ did not properly consider the medical opinions. Plaintiff is correct in pointing out that the ALJ did not explain the weight given to the opinion of the state agency physician expressed in the physical RFC assessment completed in Aug. 2003, and did not explain the weight given the opinion of Dr. Curtis. (Pl. Br. 27-28). An ALJ may not ignore any medical opinion, and in a case such as this, where the treating source opinion is not given controlling weight, must evaluate all medical opinions in accordance with the

---

[5]As plaintiff argues, the ALJ provided no citation to medical authority for these two "absolute inconsistencies." (Pl. Br. 25, n.3). Moreover, the Tenth Circuit has found that "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir. 2002) (quotation omitted; emphasis in original). If, on remand the Commissioner desires to rely upon these alleged inconsistencies, he will need to cite to appropriate medical authority.

regulatory factors.  20 C.F.R. §§ 404.1527, 416.927; SSR 96-5p,
West's Soc. Sec. Reporting Serv., Rulings 123-24.

The ALJ acknowledged the opinion of the state agency
physician, but made no attempt to analyze the weight of which it
was worthy, and did not explain the weight accorded to it.
Because the ALJ accorded "little weight" to this opinion in his
first decision (R. 22), and because the RFC assessed by the ALJ
is inconsistent with the opinion of the state agency physician,
plaintiff makes the reasonable presumption that the ALJ again
accorded "little weight" to this opinion.  (Pl. Br. 27).
However, the court's review must be based upon the reasons relied
upon by the Commissioner, and the court may not presume the
Commissioner applied the correct legal standard.  SEC v. Chenery
Corp., 318 U.S. at 87; Robinson, 366 F.3d at 1083.  Remand is
necessary for the Commissioner to properly weigh and explain the
weight accorded the opinion of the state agency physician.

Similarly, the ALJ acknowledged and discussed a report of
examination prepared by Dr. Curtis.  (R. 405).  However, at the
ALJ hearing plaintiff voiced certain concerns which might affect
the weight accorded Dr. Curtis's opinion.  (R. 1094-95).  The ALJ
noted plaintiff's concerns, stated that he had noticed some of
the same issues, and stated that he would consider that "going to
the weight to be given to Dr. Curtis."  (R. 1095).

-25-

Yet, in the decision the ALJ did not mention plaintiff's concerns, and did not address how the issues presented affect the weight accorded Dr. Curtis's opinion.  Further, he did not mention that Dr. Curtis had prepared a Medical Source Statement which contained Dr. Curtis's opinion with regard to plaintiff's capacities, and he did not explain the weight, if any, accorded to that opinion.  (R. 1083-89).

Therefore, the court is unable to know the weight Dr. Curtis's opinion played in the decision.  This is error requiring remand for the Commissioner to properly address Dr. Curtis's opinion, explain the ambiguities presented, and explain the weight accorded the doctor's opinion.

In a final allegation regarding evaluation of medical opinions, plaintiff claims the ALJ erred in according "significant weight" to the opinion of the medical expert, Dr. Axline.  (Pl. Br. 28-29).  She argues this is so because Dr. Axline held an unsubstantiated belief that plaintiff is a drug-seeker and because Dr. Axline did not appear to have a full understanding of the record.  The court does not agree.

First, a review of plaintiff's examination of Dr. Axline at the hearing reveals that plaintiff did not agree with Dr. Axline's view of the medical records and sought to discredit the ME's opinion on that basis.  (R. 1104-08).  However, Dr. Axline provided a response for each question asked, and the ALJ need not

-26-

believe that Dr. Axline did not have a full understanding of the record.  Second, there is substantial evidence in the record to justify the ALJ's acceptance of Dr. Axline's testimony that the medical records reflect drug-seeking behavior on the part of plaintiff.

The ME testified that two-thirds of Exhibit 19F "has to do with phone calls and prescription refills.  (R. 1103).  He testified that plaintiff was taking Oxycodone and a Fentanyl patch, and that "at least six of [plaintiff's medications] had to do with pain, muscle relaxant, sedations, tranquilizers, things of, [sic] that were habit forming and frequently sought by people who are drug seeking."  (R. 1103-04).  When plaintiff sought the basis of Dr. Axline's opinion regarding drug-seeking, the doctor responded:

> I, I found the fact that she was getting a lot of
> medications for, for what minor symptoms and she was
> taking multiple medications.  She was turned away by
> one doctor because she didn't want to do what he
> wanted.  A history of cocaine dependence in the past,
> I, you know, drug seeking is not recorded as such in
> the record.  But I certainly have seen enough people to
> know that, I mean, doctors are constantly being
> besieged to get prescriptions and sometimes they are
> not for legitimate medical reasons.  A doctor, of
> course, is sympathetic to the patient.  If somebody is
> suffering you want to relieve suffering if possible.
> And if you don't give pain medication to a person then
> there's all sorts of newspaper and other articles that
> patients are not being properly cared for.  I mean,
> this stuff, the whole area in that she has been on so
> many, so many prescriptions which are controlled
> substances for so long in which numerous, 200 or 300
> pages of entries involve refilling her medications and
> where to get them and so forth.  And I feel that she

demonstrates drug seeking behavior but that's an
impression I got from the file that you sent, that I
was sent.

(R. 1106-07).

As the ME explained, there is no specific mention of drug-
seeking by a treating physician, but there is substantial
evidence in the record supporting the ME's testimony.  As the ME
testified, there is a record indicating past cocaine dependence.
(R. 339)("Valeo records show a 1992 diagnosis of cocaine
dependence.").  Further, as the ME testified, a significant
portion of Ex. 19F deals with refilling plaintiff's medications
including Oxycodone, Fentanyl, and others.

Moreover, although Dr. Spangler stated that he would have
ceased prescribing the medication if there had been prescription
drug abuse, his records reveal that he had significant concerns
with plaintiff's attempts to secure additional drugs.  For
example, when considering Lortab (Oxycodone) alone, the court
summarizes some of the evidence.  At least four times the record
indicates plaintiff was using the drug at the rate of five a day
although she had been prescribed four per day.  (R. 907, 926,
1023, 1029).  Ten times the doctor recorded that plaintiff
requested a refill too soon or too early.  (R. 840, 856, 858,
923, 926, 928, 950, 966, 1000, 1025).  At least twice plaintiff
was told her prescription would not be refilled until a specific
date.  (R. 894, 998).  Once the pharmacy refused to refill the

prescription.  (R. 950).  Once the doctor recorded that plaintiff
was taking "way too much Lortab."  (R. 870).  Once plaintiff
reported that she had knocked about half her prescription down
the drain.  (R. 903).  And, once she reported she had lost her
medications at the airport.  (R. 938).  In the face of this
evidence, the court cannot find error in the ME's opinion that
plaintiff was drug seeking, or in the ALJ's acceptance of it.

Nonetheless, the court finds that the ALJ did not properly
explain why the ME's opinion should be credited over the opinion
of the treating physician.  The Tenth Circuit has long held that
when a treating source opinion is inconsistent with the other
medical opinions the ALJ's task is to examine the other
physicians' reports "to see if [they] 'outweigh[]' the treating
physician's report, not the other way around."  Hamlin v.
Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004); Goatcher, 52 F.3d
at 290; Reyes, 845 F.2d at 245.  Because the ALJ determined the
treating physician's opinion was unworthy of controlling weight,
he was required to weigh all of the medical opinions in
accordance with the regulatory factor, to examine the other
physicians' reports to see if they outweigh the treating source
opinions, and to explain the weight and the basis for the weight
assigned each opinion.  The ALJ stated four reasons for
discounting the treating physician's opinion, but, as explained
above he did not specify the weight assigned the opinions of Dr.

Curtis or of the state agency consultant.  Moreover, he did not
explain how the opinions of the other physicians outweigh the
opinion of Dr. Spangler.  Because he did not do so, remand is
necessary for the Commissioner to properly weigh the medical
opinions.  Anderson v. Astrue, No. 05-4305, slip op. at 14-15
(10th Cir. Apr. 3, 2009).  On remand the Commissioner should
consider and evaluate the weight to be given to all medical
opinions in the record in accordance with the regulatory factors.

       The court finds that remand is necessary for the
Commissioner to properly evaluate plaintiff's mental
impairment(s) and to properly weigh the medical opinions.  The
court does not reach the remaining issue of credibility because
it may be affected by the treatment of the case on remand.
Robinson, 366 F.3d at 1085.[6]

       Plaintiff seeks remand for an immediate award of benefits.
(Pl. Br. 40)(citing Gatson v. Bowen, 10th Cir. 1987).  However,
plaintiff's argument for immediate award of benefits is
conclusory and establishes only the court's authority to remand
for an immediate award, but does not address how the evidence

_____

       [6]Plaintiff claims the ALJ made a factual error in stating
"the medical expert specifically pointed out that she had no
recent complaints of anxiety or depression and had been
maintained on a mild antidepressant."  (Pl. Br. 29)(citing R.
406).  Plaintiff is correct, the court found no such statement by
the ME, and on remand, the Commissioner must correct this factual
error before weighing the medical opinions and before determining
the credibility of plaintiff's allegations.

presented here might justify a determination to remand for an immediate award of benefits.  <u>See</u>, <u>e.g.</u>, <u>Salazar v. Barnhart</u>, 468 F.3d 615, 626 (10th Cir. 2006)(length of time matter has been pending and whether remand for additional fact-finding would serve any useful purpose).  Because the record evidence is equivocal, and because plaintiff points to no evidentiary basis to remand for an immediate award of benefits, the court finds that a remand would serve a useful purpose.

The court would caution the Commissioner that this is the second time the court has remanded this case, and the next decision must address the issues presented thoroughly, and carefully explain the rationale for the decision reached.  The defendant is not entitled to adjudicate a case ad infinitum until it correctly applies the proper legal standard and gathers evidence to support its conclusion.  <u>Sisco v. Dep't of Health & Human Serv.</u>, 10 F.3d 739, 746 (10th Cir. 1993).

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision be REVERSED and judgment be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent with this opinion.

Copies of this recommendation and report shall be delivered to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b), and D. Kan. Rule 72.1.4, the parties may serve and file written objections to this

recommendation within ten days after being served with a copy. Failure to timely file objections with the court will be deemed a waiver of appellate review.  <u>Morales-Fernandez v. INS</u>, 418 F.3d 1116, 1119 (10th Cir. 2005).

Dated this 17th day of April 2009, at Wichita, Kansas.

s/Donald W. Bostwick
**DONALD W. BOSTWICK**
**United States Magistrate Judge**